THE STATE, PROSECUTOR, DEFENDANT IN ERROR. v. STEPHEN M. EGAN, DEFENDANT, PLAINTIFF IN ERROR.

Argued February 29, 1912—Decided April 23, 1912.

1. Where an indictment describes the defendant as a county collector, entrusted with the collection, receipt, care and custody of the money of the county, and charges him with embezzling the money so received for the county, it describes an offence against the provisions of section 168 of the Crimes act, notwithstanding it also charges that he converted to his own use the money of the county as its servant and agent, and it is not void for duplicity, although section 184 of the same act makes it a crime for any agent or servant entrusted with the collection of money to convert it to his own use. Section 168 deals with public officers such as the defendant is described to be, and he is the agent or servant of the county when acting as county collector, and when he embezzles he converts the money or property to his own use. The distinction is that in one case the law is aimed at a public officer, and in the other at one who is simply an agent and servant in a private capacity. In either case they are servants or agents, and when either embezzle they convert to their own use.

2. A defendant in an indictment has no legal ground of complaint that a grand jury which might, but did not, consider a complaint against him, was discharged by the court. His constitutional right is limited to a grand jury lawfully impaneled, not to have a particular set of men constitute the grand jury.

3. A statute which provides that a grand jury shall be summoned by the coroners or elisors, when the *venire* is directed to them, gives a preference to neither, and the court, when the sheriff has been disqualified and a *venire* is required, may direct it to either, and a grand jury selected and summoned by elisors, when the *venire* is sent to them, which is sworn and recognized by the court as a grand jury, is lawfully constituted as such, and complies with the constitutional requirement relating thereto.

On error.

Before Justices BERGEN and KALISCH.

For the state, *Pierre P. Garven.*

For the defendant, *Julius Lichtenstein* and *John Franklin Fort.*

The opinion of the court was delivered by

BERGEN, J. The grand jury of the county of Hudson having presented an indictment against the defendant, charging him with embezzlement, he moved to quash it, and the motion being denied he was tried and convicted, and thereupon the judgment was pronounced, which he seeks by this writ of error to review. The assignments of error challenge the action of the trial court in refusing the motion to quash; the denial of a motion in arrest of judgment; the admission of testimony; the charge of the court, and refusals to charge as requested, which will be considered and disposed of in the order presented by counsel.

That part of the indictment which is pertinent to the questions raised reads as follows: "The said Stephen M. Egan, being then and there the county collector in and for the said county of Hudson, and as such county collector being a receiver of taxes and of moneys, being the proceeds of the collection of taxes, for and on behalf of the board of chosen freeholders of the county of Hudson, and as such county collector, being then and there the servant and agent of the said board of chosen freeholders of the county of Hudson, and being, as such servant and agent entrusted with the collection, receipt, care and custody of the moneys of the said board of chosen freeholders of the county of Hudson, did then and there unlawfully and fraudulently take and embezzle and convert to his own use a certain large sum of money, to wit, the sum of thirty-one thousand five hundred dollars, he, the said Stephen M. Egan, having theretofore, to wit, on the said fourth day of August, A. D. one thousand nine hundred and nine, received

the said sum of money as such county collector as aforesaid, for and on behalf of the said board of chosen freeholders of the county of Hudson."

The first point argued by the plaintiff in error is, that this indictment should be quashed because it charges two distinct offences which are subject to different penalties, and the particular objection pressed is that the defendant was tried, convicted and sentenced for a high misdemeanor under section 168 of "An act for the punishment of crimes (Revision of 1898)," *Pamph. L., p.* 794, while it is claimed that part of the offence described in the indictment is made a crime by section 184 of the same act, and therefore the indictment is bad for duplicity. Section 184 declares that "any consignee, factor, bailee, agent or servant  *  *  *  entrusted with the collection or care of any moneys who shall fraudulently take or convert the same  *  *  *  to his own use or to the use of any other person or persons whatsoever," shall be guilty of a misdemeanor. While section 168 declares that any county collector having taxes to collect "who shall embezzle, unlawfully loan, or retain in his hands any moneys received or collected by him" for any county, or other designated municipalities, shall be guilty of a high misdemeanor.

The claim of the plaintiff in error is, that while section 168 does not contain either the words "convert to his own use," or "as servant and agent," they do appear in section 184, and also in the indictment, and therefore as the indictment charges the defendant with receiving the money as county collector under section 168, and with being the servant and agent of the county, and with converting the money of the county to his own use, in the language contained in section 184, it charges different offences. This claim, in my opinion, has no legal standing, for section 168 deals with public officers and makes it a crime to embezzle public funds received by them in their public capacity, and the addition of the words "and convert to his own use" does not enlarge or modify the statutory crime of embezzlement, which is the fraudulent appropriation, to his own use, of money or property by one to whom it is entrusted while acting in a fiduciary capacity, nor does the statement

that a public officer, described in the statute and indictment as county collector, was, as such, the servant and agent of the county, detract from the charge that he was one of a class of officers, whose embezzlement of public funds, received as such by him, is made a high misdemeanor. It is the character of the agency that is the distinguishing feature between the two sections.

The next point urged is that the grand jury who presented this indictment was not lawfully selected and impaneled, and for this reason it is argued it was error to refuse to quash the indictment, or to grant the motion in arrest of judgment.

The facts upon which these motions were based are not disputed in any material point, and stated concisely are as follows: On the opening day of the Court of Oyer and Terminer, to be held in and for the county of Hudson, at the September term, 1911, the sheriff of the county caused to come before the court a sufficient number of the citizens of the county selected by him to serve as grand jurors, whereupon, and before they were sworn, the prosecutor of the pleas interposed a challenge to the array, upon the ground that the sheriff had been charged with an offence against the law of which the grand jury he had selected would be required to inquire, and therefore he was not an impartial person. After considering the propriety of the' challenge the court sustained it and discharged the entire panel, and then made an order disqualifying the sheriff upon the ground that a complaint was to be made to the grand jury against him, and also restraining him from selecting or summoning a grand jury to serve at that term of the court, and in the same order, having determined that it appeared that a grand jury for the September term of the court should be selected and summoned by elisors, appointed two disinterested freeholders, both residents of Hudson county, to select and summon, and cause to come before the court twenty-four good and lawful men of the body of the county of Hudson to serve as grand jurors. The elisors so appointed having qualified, observed the command of the *venire* and returned a grand jury, which being impaneled and

sworn, presented the indictment under which the defendant was convicted.

No express order was made disqualifying the coroners, but testimony was taken on the question of the qualification of the coroners at the time when the qualification of the sheriff was inquired into, and it must be assumed that if the court had no option in the matter of awarding the *venire* to the elisors, such order was based upon the finding that the coroners were not so indifferent as to justify the awarding of the writ to them. The testimony disclosed that three coroners had been elected, filed their oath of office, and had been actually performing the duties of their respective offices until the awarding of the writ to the elisors. It also appeared that there was a defect in the oath of office of one of them, Michael J. Boylan, which, after a particular statement of the statutory requirements relating to what he should refrain from doing, concluded "that I will, in all things touching the duties of the said office, demean myself honestly, fairly and *partially* according to the best of my knowledge and understanding." The error upon which, apparently, the disqualification of Boylan was rested consists in the use of the word "partially" instead of "impartially." As no other reason for the disqualification of the coroners appears, it must be taken, and was so admitted on the argument by the state, that if disqualification of the coroners was required in order to award the *venire* to the elisors, the entire body of the coroners of the county were ignored because the oath of one was defective. I cannot agree that the omission of the use of the prefix mentioned was sufficient to disqualify all the coroners of the county and deprive it of the services of every one of its constitutional officers of that class, who were elected at different times, and whose terms of office are not concurrent. If this be a disqualification of one coroner, he is disqualified for all purposes, and it is as if he had never qualified, in which case it cannot be the law that the other coroners were disqualified to perform any of the duties of their offices because of the failure of one to qualify, and this seems to have been the view of the court in *Rex* v. *Warrington,* 12 *Mod. Rep.* 22, and therefore I have considered this

case as though the *venire* could have been directed to those of the coroners who had qualified if the court, in the exercise of its discretion, had seen fit to send it to them.

The plaintiff in error insists that it was error to discharge the panel returned by the sheriff because he had selected its members before the commission of the crime with which he was charged, and that he was therefore impartial at the time of selection. I am of the opinion that the impartial condition must exist at the time when the grand jury is presented to be sworn, for, as no precept is required, the sheriff could change the members of the grand jury at any time prior to the administration of the oath; the six days' notice to the grand juror required by the statute is for his benefit, and if he appears and is sworn, lack of a summons, six days in advance, would not disqualify him, nor can anyone take advantage of the absence of the notice except the juror. But it is not necessary to rest alone upon this proposition, for the defendant cannot justly complain of the discharge of a grand jury which did not present an indictment against him; he is only concerned with the legality of the grand jury which presents the indictment, and if that was impartial, selected as required by law, and sworn and recognized by the court as a grand jury, no constitutional right has been invaded (*People* v. *Petrea,* 92 *N. Y.* 128), where it was said "that an indictment found by a jury of good and lawful men selected and drawn as a grand jury under color of law, and recognized by the court as a grand jury, is a good indictment by a grand jury within the sense of the constitution, although the law under which the selection was made is void."

The defendant's constitutional right is that he shall not be held to answer for a criminal offence except on the presentment or indictment of a grand jury, and it is not to have a particular set of men constitute a grand jury. All he is entitled to is an impartial one, selected according to law, and no claim is made in this case that, if lawfully impaneled, the members of the grand jury presenting this indictment were not in every other sense duly qualified.

The right of the prosecutor to challenge the array was sustained in the Somerset Oyer and Terminer by the late Chancellor Magie, then justice of the Supreme Court (3 *N. J. L. J.* 153), and the power of the court to discharge a grand jury improperly selected or summoned, has, in order to further the administration of justice, been exercised for so many years that it has become a fixed part of the judicial procedure in criminal cases, and I do not understand that such power is questioned in this case.

The next point urged is that the court having disqualified the sheriff, upon the ground that he was not such an impartial person as the law requires to select and return a grand jury, was bound to award the *venire* for the selection and summoning of the grand jury to the coroners of the county, unless they were all disqualified, and that it was error to pass over the coroners and appoint elisors, as was done in this case. This is based upon the claim that at common law such a procedure was required.

The constitution does not define who shall constitute a grand jury, nor the method of their selection or summoning, but the character and qualification of grand jurors, the manner of their selection and summoning, has always been subject to statutory regulations. It may be granted that under the English procedure the practice obtained, that in case of the disqualification of the sheriff the *venire* was first directed to the coroners, and if they were disqualified, to elisors, but the procedure has always been subject to legislative control, and the entire question of selecting and summoning grand jurors in this state has been for many years provided for and regulated by statute.

In 1794, an act was passed entitled "An act constituting courts of oyer and terminer and a general jail delivery," section 5 of which provided that the respective sheriffs of the several counties of this state should cause to come before the said courts, at the time and place specified in the precept for that purpose, twenty-four good and lawful men to serve as grand jurors, and by section 6 it was enacted that the clerk of the Supreme Court should "issue precepts under the seal of

the said Supreme Court, directed to the respective sheriffs of the counties, in which such court or courts shall be held for the purpose expressed in the preceding section," and that the said precepts should be tested in the name of the Chief Justice, or if that office be vacant, in the name of the justice of the Supreme Court next in precedence (*Pat. L., p.* 137), and in the same book, page 259, under the title "An act relative to juries and verdicts," the legislature provided that the summons of any grand juror should be made by the sheriff or his lawful deputy either personally to, or in writing, left at the dwelling-house of such grand juror at least six days before the first day of the court. The effect of these statutes was that a *venire* should issue out of the Supreme Court directed to the sheriff requiring him to cause to come before the Court of Oyer and Terminer twenty-four good and lawful men to serve as grand jurors, who should have given to them the notice prescribed by the statute. The *venire* committed to the sheriff the power of selecting those whom he should cause to come by giving the statutory notice.

In 1819 (*Penn. L., p.* 658), the act constituting the Courts of Oyer and Terminer was so amended as to require the sheriff to cause the grand jurors to come before the court without a precept, and this is now the law, it having been retained in all the statutes relating to this subject from 1819 to the present time, so far as the selection by the sheriff is concerned. The summoning of the grand jurors appears to have been exclusively committed to the sheriff until the revision of March 27th, 1874 (*Rev., p.* 526, § 8), which provided that the summons should be made by the sheriff or his deputy or by one of the coroners when the *venire* should be awarded to the coroners, and this legislative language is a recognition of the power of the court to award a *venire* to the coroners if the sheriff is disqualified, for it would be futile to authorize the coroners to summon the grand jurors when the *venire* was awarded to them, and yet withhold the power to award a *venire,* and while statutes must be strictly construed, they should be so construed, if possible, as to effectuate the legislative intent, and clearly this statute was a recognition of the power of the court

to direct a *venire* to the coroners when that was necessary to procure a grand jury, for a grand jury is a required constitutional implement necessary to carry out the criminal procedure in courts, and a legislative direction that the coroners shall summon when the *venire* is directed to them, of necessity implies the power of the court to issue a *venire,* without which the statute would be nugatory, and the *venire* necessarily confers the power of selection, unless it be otherwise ordained.

The next legislative step in the matter of selecting and summoning grand jurors was taken in 1876 (*Pamph. L., p.* 360), which provided that grand jurors should be "summoned by the sheriff, or his deputy, or by one of the coroners or elisors, when the *venire* shall be awarded to the coroners or elisors." There is nothing in this act which limits the awarding of the *venire* to the coroners in case the sheriff is disqualified, but neither the coroners or elisors can summon a grand jury without a *venire,* and if the court is called upon to issue its *venire* for that purpose it must be directed either to the coroners or elisors. The statute does not declare that if the coroners are disqualified the *venire* shall go to the elisors, nor is there any statute which expressly requires them or either of them to cause the grand jury to come before the court without a *venire* as in the case of the sheriff, who has the statutory right, but if he is disqualified, and the court is called upon to issue its *venire,* the statute declares, in the disjunctive, the summons shall be by the coroners or the elisors when the *venire* shall be awarded to the one or the other.

It is quite important in construing our statute on this subject to bear in mind that it was adopted with full knowledge of the procedure followed by the English courts which it may be assumed required the *venire,* the sheriff being disqualified, to issue to the coroners in preference to elisors when the coroners were not disqualified. This procedure the plaintiff in error claims was a part of the common law at the time of the adoption of our constitution, and by virtue thereof became a part of the body of our law which has not been altered by legislation. This position is vital to the case of the plaintiff in error who insists, the power of the court to award a

*venire* being granted, that the act under consideration has no bearing on the question to whom the *venire* should go, but is limited to conferring the right to summon upon the officer holding the writ. The right to summon is one of the powers granted, under *Pamph. L.* 1876, *p.* 360, § 8, to the officer to whom the writ is directed; this clearly implies the power of selection, and, in my opinion, authorizes the awarding of the *venire* to one who is to select and summon by giving the statutory notice—that is, this is a statutory regulation of the method by which a grand jury is to be brought into court in default of a proper sheriff. The plaintiff in error insists that, granting this, nevertheless the statute is merely declaratory of the common law rule of procedure and must be construed as if it read "summoned by the sheriff or his deputy or by one of the coroners or (if they be disqualified) elisors." Yet, as I have said, with knowledge of the rule followed by the English courts, no such limitation was put by the legislature upon the awarding of the *venire,* the evident intent being to confer upon the court the power to provide for the selection of a grand jury when the sheriff was unable to properly perform that duty. If the legislature intended to give preference to the coroners, it could easily have done so by inserting the words, which the plaintiff in error now desires to have read into the statute, when, in 1876, it amended the act of 1874 by adding the words "or elisors," that being the only amendment then made to the section under consideration. If it was the legislative intent not to confer a power which it deemed did not exist, but simply to declare the common law, it failed to accomplish that purpose, and, we must assume, having before it the procedure in the English courts upon which plaintiff in error relies, refused to adopt it, but, by the use of language which in its ordinary sense confers the power in the alternative, established a rule inconsistent with that upon which the argument for reversal on this ground is rested.

I am of opinion that under our statute, if the sheriff is disqualified, the court has the right to direct the *venire* either to the coroners, or to elisors as it shall determine, and that in this case the defendant has not been deprived of any con-

stitutional right by the manner in which the grand jury was selected, impaneled and sworn.

The plaintiff in error argues that if the court has the right under this statute to pass by the coroners and direct the *venire* to the elisors, it would have the same power in any case and could send the writ to elisors over the sheriff. The difficulty with this proposition is, as has been pointed out, the sheriff is the statutory officer to select and summon the grand jury, if he be a proper person, and if he should complain that he had been deprived of the right conferred upon him by law, without lawful reason, a different question would be presented; but the defendant is not interested in the disqualification of the sheriff; his only concern is, has the court discretionary power, when the sheriff is disqualified, to appoint either coroners or elisors, or must preference be given to the coroners?

The plaintiff in error also insists that the crime of embezzlement was not proven, and if any offence was shown it was that of an unlawful loan. This assignment rests first upon the refusal of the trial court to charge, as requested, "for the county collector to unlawfully loan the money of the county in his custody as county collector, is a distinct crime, so made by statute, and such an unlawful loan does not constitute the crime of embezzlement unless the further fact appears that the collector failed to account for the funds in his custody and so loaned, on demand, or at a time fixed for him to account for the same, or to pay the same over to his qualified successor," and also upon what the court did charge, namely, that "the defendant, however, is not indicted for loaning the money of the county unlawfully, and if that is what he did he could not properly be convicted under this indictment. But in deciding whether the transaction was an unlawful loan, you must bear in mind not only the fact that no interest was demanded, paid or received, as is ordinarily the case with a loan, but that the note was not the note of the Jersey City Supply Company to which the checks were made payable, or of Robert Davis against whose estate the defendant filed a claim for the money, but was the note of Robert Davis, Jr., who is not claimed to be primarily liable; and you should con-

sider especially the facts that the note· was payable to S. M. Egan individually, and that he seems to· have claimed it individually of the Davis estate, and to have assumed the right to forego the interest and to assign the balance of his claim against the Davis estate. * * * You can hardly infer that such a transaction was an unlawful loan within the meaning of the statute. Such facts justify, if they do not require, the inference that he converted the money to his own use, and if he acted with intent to defraud his act is embezzlement."

The part of the charge of the court complained of was a mere comment on the evidence, except so far as it instructed the jury that if what the defendant did was to unlawfully loan the money of the county, he could not be convicted under this indictment, and that part of the charge covered the refused request of which complaint is now made. The request was that if it was an unlawful loan it was a distinct crime and not an embezzlement, and the court so charged.

The next point made, is that the court allowed the witness Robert Davis to answer this question, "*Q.* What did you do with the money, this $31,500, Mr. Davis?" This was objected to as incompetent. The record shows that the court allowed the evidence upon condition that the prosecutor should connect the defendant with the transaction, and that if he did not he would strike it out. The exception is not to the refusal to strike out, but to the admission of the question, but if we give to the defendant's exception its intended scope—that is, an exception to the question as it then stood unconnected with any act of the defendant, and accede to his position that it was incompetent, it is very clear that the testimony was not harmful to him. The answer was that he, the witness, paid the money to the trustees of a church, and, as it was immaterial to the defendant's defence what the borrower did with the money after he had passed it over to him, for the conversion was then complete, if there was a conversion, he was not injured by the testimony. The crime, if there was a crime, was complete when defendant converted the money, and the disposition made of it by Davis after the conversion did not constitute an element of the crime charged against the defendant.

To whom Davis paid the money after it had gone out of the control of the defendant did not add to or diminish the completed offence. In addition to this, and perhaps because it was harmless, the defendant did not move to have the answer stricken out at the close of the case as he should have done if it was incompetent because the disposition of the money by Davis was not brought to the knowledge of the defendant.

The next assignment questions the legality of an instruction to the jury in answer to its request for further instructions after it had retired to consider of its verdict. The instruction complained of is "in order that the defendant may be found guilty of embezzlement it is necessary to find that he converted this money to his own use, with intent to defraud the county. You may infer that he converted the money to his own use from the fact that he took the money and loaned it in his own name, if you find that to be the fact. You may infer the intent to defraud from the fact that he parted with the control of the money and put it beyond his power to pay it over at once—that is, he failed to keep the money in his control and put it in the control of others." The criticism which the plaintiff in error makes is, that this was a direct statement that if the defendant had loaned the money to Davis the jury could infer that he converted it to his own use by thus loaning it. I see no error in this instruction. If the defendant took the money of the county and loaned it as his money, he then converted it to his own use, at least such an inference could be drawn. What the statute means by "unlawfully loan" is loaning the money of the county as the county's money in a way not authorized by law, for if a public officer takes the public funds and invests them in his own name with intent to defraud, the moment he makes the investment he fraudulently converts the money to his own use, and that would be embezzlement which the statute makes a crime.

This disposes of all the questions argued, and finding no error in the record, the judgment below should be affirmed.